Harry F. Atkinson & Sons, Appellant, *v.* Pennsylvania Public Utility Commission.

538

Argued March 27, 1958. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*James L. Price*, with him *Richman, Price & Jamieson*, for appellant.

*Paul Ribner*, Assistant Counsel, with him *Howard L. Criden*, Assistant Counsel, and *Thomas M. Kerrigan*, Acting Counsel, for Public Utility Commission, appellee.

*Morris J. Winokur*, and *Winokur & Kahn*, for applicant, intervening appellee.

OPINION BY GUNTHER, J., June 11, 1958:

This appeal is from an order of the Pennsylvania Public Utility Commission by Harry F. Atkinson and Sons, a common carrier by truck, granting additional motor carrier operating authority to William G. Thompson, intervening appellee. The contention is that the Commission's order is not supported by substantial evidence and is, therefore, an abuse of discretion.

On July 30, 1956, William G. Thompson, holder of certificates of public convenience, authorizing trans-

portation of property as a common carrier between points within Pennsylvania, filed an application for additional rights as a Class D carrier to transport property for four enumerated firms between points in the city of Philadelphia. At the hearing, one of the firms for which authority was requested was deleted. Protests were filed by fourteen motor carriers and on April 8, 1957, after hearing, the Commission issued a "short form" order approving the application "to transport, as a Class D carrier, property for G. J. Littlewood & Sons, Inc., Bankin Yarn Co., Inc., and Wissahickon Plush Mills, Inc., between points in the City of Philadelphia, Philadelphia County." On May 8, 1957, appellant filed an appeal from said order and also filed a petition for supersedeas. On June 15, 1957, we allowed the supersedeas and, on the same day, upon application of the Commission for remission of the record, we remitted the record so that the Commission could issue a long form order. This order was issued on June 24, 1957 and this appeal followed.

The record indicates that the type of service applied for and requested by the shippers enumerated in the application is particularly individual and personalized service which the protestants have not and do not provide. The representatives of Wissahickon Plush Mills, Inc., testified that other carriers cannot be relied upon to provide the fast service required and are not familiar with the location of the various departments of the company so as to proceed and select quickly and efficiently the merchandise which must be transported. On certain occasions, carriers were not available when needed and the service offered was not satisfactory. The representative of G. J. Littlewood and Sons, Inc., disclosed that the experience of this company with carriers other than the applicant was unsatisfactory because they were not familiar with its type of opera-

tions and were not available when needed. The testimony of Blankin Yarn Co., Inc., complained that the service provided by the appellant had not been adequate to meet the needs of this firm. The testimony as a whole disclosed that the shippers to be served by the intervening appellee were clearly dissatisfied with the service rendered by appellant and other carriers.

The scope of our review has been stated many times. Our duty is not to exercise our independent judgment on the record or to weigh conflicting evidence, but is limited to the question whether there is substantial evidence to support the findings and order of the Commission. *Modern Transfer Co. v. Pennsylvania Public Utility Commission*, 182 Pa. Superior Ct. 110, 125 A. 2d 463; *Pennsylvania Railroad Co. v. Pennsylvania Public Utility Commission*, 181 Pa. Superior Ct. 343, 124 A. 2d 685. A review of the testimony discloses that the shippers involved were complaining of the type of service rendered and took the form of expressions of fear that other carriers could not provide the service necessary for a smooth operation of their business even if such service would be available some of the time.

Judge WRIGHT in *Daily Motor Express, Inc. et al. v. Pennsylvania Public Utility Commission*, 183 Pa. Superior Ct. 120, 130 A. 2d 234, under similar circumstances said: "This testimony took the form of complaints as to the nature of the service rather than proof that the service was not available. We have recognized the probative value of such evidence. See *Garner v. Pennsylvania Public Utility Commission*, 177 Pa. Superior Ct. 439, 110 A. 2d 907. Its weight was for the Commission: *Gongaware & Sons v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 9, 60 A. 2d 364."

The appellant does not contend that the shippers here involved do not need the type of service granted by the Commission but insists that it, and not the applicant, should provide it. However, in view of this record, that position is untenable. The shipping public need not be indefinitely inconvenienced by disinterested carriers. *Daily Motor Express, Inc. et al.,* supra; *Noerr Motor Freight v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 322, 124 A. 2d 393. The testimony disclosed that in the case of one of the shippers, frequently certain lots of wool were completed after regular working hours and had to be transported during the same night and that the production of its customers depended upon fast delivery. Another shipper testified that it had to deliver cases of yarn on short notice and at odd hours in order to keep the looms of its customers running. However, when a request for service was made, the trucks of other carriers were either unavailable or so late as to make deliveries possible only the following day.

Appellant also contends that appellant's past operations were illegal in that previous hauling done by applicant for the shippers now requested were not authorized in the previous certificate of authority. In *Lancaster Transportation Co. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 129, 124 A. 2d 380, we held that the mere fact of prior operation without prior approval is not per se equivalent to an offense which will prohibit absolutely the acquisition of proper authority when the application is subsequently made. The distinction between those violations which are prohibitive and those which will be accepted as competent evidence is, to a large degree, dependent upon good faith. If such violation is the result of a bona -fide misunderstanding of the service authorized by the Commission, there is no substantial basis, either

legally or morally, to object to its use in a certification proceeding. While it was conceded that portions of intervening appellee's operations were not in accordance with his certificated authority, whether such prior violations were excusable was primarily a matter for the Commission: *Daily Motor Express, Inc. et al.,* supra; *Arrow Carrier Corp. v. Public Service Commission,* 120 Pa. Superior Ct. 570, 182 A. 711. As the Commission's order points out, at an earlier time the applicant applied for rights which would have allowed him to serve the three shippers here involved and that, following the hearing in that matter, he was advised by his attorney that the Commission had granted him a certificate covering all the rights for which he applied. It appears that the applicant acted in good faith and genuinely misunderstood the extent of his rights. As a matter of fact, a letter was introduced into evidence in which his attorney advised applicant that his certification covered all the rights for which he applied.

It is our view that the evidence is sufficient, both as to quantity and quality, to justify the order of the Commission, and that there has been no abuse of discretion.

The order of the Commission is affirmed.