## Leaman Transportation Company, Appellant, *v.* Pennsylvania Public Utility Commission.

554

Argued April 19, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Woodside and Ervin, JJ.

*Paul F. Barnes*, with him *Shertz, Barnes & Shertz*, for appellants.

*Harris J. Latta, Jr.*, with him *Thomas M. Kerrigan*, Assistant Counsel and *Lloyd S. Benjamin*, Counsel, for appellee.

*Harry H. Frank*, with him *Jefferson C. Barnhart* and *McNees, Wallace & Nurick*, for intervenor, appellee.

Opinion by Rhodes, P. J., July 13, 1954:

These appeals are by competing carriers from an order of the Pennsylvania Public Utility Commission enlarging the rights of Seaboard Tank Lines, Inc., as

a motor carrier of petroleum products in tank vehicles, and granting it a certificate of public convenience to transport such products, as a Class D carrier, between any two points in Pennsylvania within one hundred fifty miles of the Borough of Macungie, Lehigh County. The authority granted was in lieu of former complex, detailed, lesser rights held by Seaboard which covered in part the same territory.

From its headquarters in Scranton, Pennsylvania, Seaboard is presently operating forty-one tank trailer units for the transportation of petroleum products. Seaboard holds certificates authorizing interstate as well as intrastate carriage. Under its former authority it transported about 61,000,000 gallons for large oil shippers in 1952. Of this about 44 per cent, or 26,000,000 gallons, was intrastate transportation in Pennsylvania. In its application filed with the Commission on March 3, 1953, Seaboard set forth its existing intrastate authority at A. 71220, Folders 2, 3, 4, 5, and 6, as amended. The testimony showed that the present application by Seaboard was made because of a shift in the source of supply resulting from the establishment of new terminal points at Macungie, Allentown, and DuPont, through the facilities of the Buckeye Pipe Line Company recently extended into Pennsylvania. Much of Seaboard's traffic had formerly originated at New Jersey terminal points, and Seaboard's witnesses estimated that the opening of new terminal points on the Buckeye pipe line would bring about a substantial increase in its intrastate traffic.

Appellants (Leaman Transportation Company, E. Brooke Matlack, Inc., and Coastal Tank Lines, Inc.) protested the application. They are all presently engaged in transporting petroleum and petroleum products in tank motor vehicles between all points involved in Seaboard's contested application and beyond. The

Commission held hearings at which nine shipper witnesses, representatives of oil companies, testified on behalf of Seaboard. Representatives of each of the protestants also gave testimony. The Commission, on October 26, 1953, issued a short form order approving the application and canceling former certificates of Seaboard at A. 71220, Folders 2, 4, 5, and 6, as amended. We remanded the record to the Commission, which, on March 29, 1954, issued a supplementary confirmatory order granting Seaboard a certificate authorizing "the transportation of petroleum and petroleum products, in bulk, in tank vehicles, as a Class D carrier, between points in the Borough of Macungie, Lehigh County, Pennsylvania, and within 150 miles of the limits of said borough, . . ."

In granting the certificate, the Commission, following the mandate of the statute (section 203 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS § 1123), found that "public accommodation, convenience and necessity require approval of the application; . . ." Under section 1107 of the Public Utility Law of 1937, as amended, 66 PS § 1437, the order of the Commission may not be set aside except for error of law or lack of evidence to support the finding, determination, or order of the Commission, or violation of constitutional rights. *Follmer Trucking Co. v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 75, 80, 90 A. 2d 294. The Commission having found that the proposed service would be in the public interest, our inquiry in this regard is limited to a determination of whether there is substantial evidence to support the findings of the Commission. *Zurcher v. Pennsylvania Public Utility Commission*, 173 Pa. Superior Ct. 343, 347, 98 A. 2d 218.

Appellants' principal contention is that Seaboard did not show sufficient evidence of inadequacy of existing service, or of demand for the new service, in the one

hundred fifty mile area. On this point appellants concede arguendo Seaboard's right to follow the traffic to the extent of making the new pipe line outlet at Macungie a point of origin for shipments to any point of destination within the one hundred fifty mile radius as to which Seaboard previously held special authority. Appellants object to the order of the Commission in that it permits Seaboard to haul generally between any two points in the one hundred fifty mile radial area.

Appellants' contention that there is no evidence of need for the service authorized in the one hundred fifty mile area minimizes or ignores completely the fact that Seaboard's prior certificates gave it authority to transport between many of the points within this same area. The Commission stated:

"Applicant's existing rights authorize it to transport for many specified shippers to hundreds of points within eastern Pennsylvania, but the points of origin and the points of distribution vary for each authorized shipper. The complexity of applicant's existing rights as presently expressed is best illustrated by the exhibit submitted by applicant prepared for it by Rand McNally Company which required seven maps to picture the nature and extent of Seaboard's consolidated rights, and even then, each map requires a separate key or legend in order to interpret it." For instance, Seaboard had five separate rights, limited as to destination, to originate shipments at the important oil centers of Philadelphia and Marcus Hook. The authority here granted could probably be sustained as primarily a consolidation of existing rights.

In addition there is substantial evidence in the record to support the Commission's finding that it would be in the public interest to consolidate, simplify, and enlarge Seaboard's rights so that it could haul between any two points in the one hundred fifty mile area. Vari-

ous shipper witnesses testified that the points of origin and destination of their shipments were constantly changing, and, in order to avoid confusion and make the service more flexible, they wished Seaboard to be given the right to haul between any two points in the area. Further, appellants had secured and now hold rights to transport between any two points in Pennsylvania. Considering the evidence presented by Seaboard through its shippers as to the need for flexible and additional service between any two points in the one hundred fifty mile area, it was for the Commission to determine whether Seaboard should receive rights similar to those of appellants. In the light of all the evidence, including Seaboard's prior certificated authority, there was sufficient to support the Commission's finding of need for the proposed service within the one hundred fifty mile area. As we stated in *Zurcher v. Pennsylvania Public Utility Commission,* supra, 173 Pa. Superior Ct. 343, 349, 98 A. 2d 218, 221: "No particular type of evidence is required; the only requirement is that the evidence as a whole be legally sufficient to support the order of the Commission. Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission, supra, 170 Pa. Superior Ct. 411, 420, 85 A. 2d 646. This is met by showing that the proposed service is reasonably necessary for the accommodation or convenience of the public, or by establishing that existing service does not satisfy the public need and that the proposed service would tend to correct or substantially improve that condition. Kulp v. Pennsylvania Public Utility Commission, 153 Pa. Superior Ct. 379, 382, 33 A. 2d 724. Absolute necessity for the additional service is not a requisite, and it is not necessary that applicant establish a present demand for the service in every square mile of the territory certificated; proof of necessity within the area generally is sufficient."

Appellants' witnesses complained that the granting of Seaboard's application would produce greater competition; that a substantial portion of their equipment was idle; and that such competition would not be in the public interest. The evidence was therefore conflicting on the need for the proposed service between any two points in the one hundred fifty mile area. In such case, we have said: ". . . it is for the Commission to determine whether the available equipment and facilities are sufficient and adequate to meet the public demands, and the extent of competition to be allowed is largely an administrative question within the sound discretion and judgment of the Commission": *Zurcher v. Pennsylvania Public Utility Commission*, supra, 173 Pa. Superior Ct. 343, 348, 98 A. 2d 218, 220.

The action of the Commission did not depend entirely upon the applicability of the so-called "follow-the-traffic" doctrine, permitting a carrier to follow a shipper to a new location, to which we alluded in *Highway Express Lines, Inc. v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 145, 149, 63 A. 2d 461. Appellants urge that this doctrine, as stated by the Interstate Commerce Commission in Becker Transportation Co., Inc., Extension, 30 M. C. C. 355, has been qualified in the later decision of Smith & Solomon Trucking Company, Extension, 61 M. C. C. 748. In the Smith decision the Interstate Commerce Commission stated the paramount consideration in all cases was the public interest to which the principle of permitting the carrier to follow the traffic was necessarily subordinate. In any event we have no hesitancy in affirming the Commission on this point as it found that the granting of the present application, with the resulting competition in the area, was not inimical to, but in furtherance of, the public interest.

The findings of the Commission in this case were sufficiently specific and definite so as to enable this Court to pass upon the questions raised on appeal. *Follmer Trucking Co. v. Pennsylvania Public Utility Commission,* supra, 171 Pa. Superior Ct. 75, 79, 90 A. 2d 294.

The order of the Commission is affirmed.