Noerr Motor Freight, Inc. et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued April 19, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for appellant.

*James H. Booser,* with him *McNees, Wallace & Nurick,* for appellant.

*William J. Wilcox,* for appellant.

*Leo Daniels,* with him *Prichard, Lawler & Geltz,* for intervening appellee.

*Edward Munce,* Assistant Counsel, with him *Thomas Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission.

OPINION BY RHODES, P. J., November 21, 1955:

These appeals are from an order of the Pennsylvania Public Utility Commission of March 14, 1955. The applicant, Joseph R. Prostko, trading and doing business as Altoona-Pittsburgh Freight Line, at Application Docket No. 69239, Folder 1, Amendment E, sought authority to extend his presently certificated class A right as a motor carrier existing between Pittsburgh and the Hollidaysburg-Altoona-Tyrone area, eastward to Huntingdon, Mt. Union, Lewistown, Reedsville, Mifflintown, and Mifflin; and further to allow applicant the right to serve the Borough of Bellwood as an off-route point along applicant's presently existing route between Cresson and Tyrone. Applicant also sought authority to transport property from points in the County of Allegheny to points on the proposed extension, spur routes, and the off-route point of Bellwood, and vice versa.

Applicant filed his application at Amendment E on July 31, 1953. Protests were filed, inter alia, by Noerr Motor Freight, Inc., Motor Freight Express, Hartman's Transportation Company, and J. H. Snyder, Jr., t/a Rural Motor Express, the present appellants.

On January 4, 1955, extensive hearings having been held, the commission, one commissioner dissenting, approved the application by short form order. Protestants petitioned the commission for supersedeas and rehearing. Noerr Motor Freight, Inc., one of the protestants, later withdrew its petition and took its appeal to this Court at No. 120, October Term, 1955, and petitioned the Court for an order of supersedeas. On January 31, 1955, the commission denied the remaining petitions for supersedeas and rehearing, whereupon protestants, Motor Freight Express, Hartman's Transportation Company, and Rural Motor Express, appealed to the Superior Court. The commission petitioned this

Court on February 2, 1955, for remission of the record at Amendment E in order to make more specific findings of fact. On February 11, 1955, we returned the record for that purpose, and issued rules upon the commission to show cause why supersedeas should not be granted and stayed all proceedings under the commission's short form order of January 4, 1955. On March 14, 1955, the commission issued its long form order, one commissioner dissenting, which granted the same rights as the order of January 4, 1955, with the exception of one modification which was in accordance with a stipulation of the parties. After hearing, the petitions for supersedeas were granted by our order of March 25, 1955.

The appeals came on for argument on the merits on April 19, 1955. On October 5, 1955, reargument was had as to the sufficiency of the evidence to sustain the commission's order granting rights to applicant, first as a class D carrier, and second as a class A carrier, and as to the scope of the rights granted applicant as a class D carrier.

The commission's order of March 14, 1955, from which these appeals have been taken, extends applicant's class A authority eastward from Hollidaysburg via Highway Route 22 through Huntingdon and Lewistown to Mifflintown, thence to Mifflin via Route 35; with spur routes from Route 22 to Mt. Union via Route 522 and from Lewistown to Reedsville via Route 322. It also extended applicant's class A authority to include the right to serve the off-route point of Bellwood. The order further granted applicant the right to transport property as a class D carrier from points in the County of Allegheny to points on the above described extension, spur routes, and off-route point, and vice versa. The above rights are subject to the limitation, agreed on by stipulation of the parties, that applicant

shall have no right to render local service between points on the extension, spur routes, and off-route point.

We repeat that, on such appeals as those before us, we do not exercise our independent judgment on the record or weigh conflicting evidence; and that our inquiry in this respect is limited to the question of whether there is substantial evidence to support the findings and order of the commission. *Zurcher v. Pennsylvania Public Utility Commission,* 173 Pa. Superior Ct. 343, 98 A. 2d 218; *Leaman Transportation Company v. Pennsylvania Public Utility Commission,* 175 Pa. Superior Ct. 553, 556, 106 A. 2d 901; *Modern Transfer Company v. Pennsylvania Public Utility Commission,* 179 Pa. Superior Ct. 46, 115 A. 2d 887.

However, before we can properly review the record in these appeals, the commission's order must be of such reasonable clarity as to enable us to determine the extent and scope of the rights intended to be granted to the applicant. The order of March 14, 1955, is of such a nature that we cannot ascertain, with any degree of certainty, either the intention of the commission or the validity of its conclusions. Consequently, the record must be returned to the commission for clarification and for sufficient specific findings to support its respective conclusions.

The application, at Folder 1, Amendment E, requested an eastward extension of applicant's presently certificated class A route which, according to the application, begins in the City of Pittsburgh. In this application for amendment to a certificate which grants the right to transport property as a class A carrier by motor vehicle, the applicant also asked for the right to transport property from points in the County of Allegheny to points on the proposed extension, spur routes, and off-route point of Bellwood, and vice versa,

as a class A carrier. In its order the commission stated that, while proceedings at Amendment E were pending, separate proceedings at Amendment D were concluded by order of the commission dated April 26, 1954 whereby applicant's western terminal area was enlarged from the City of Pittsburgh to the County of Allegheny. No appeal was taken from this order. The order of March 14, 1955, does not state to what rights of applicant this expansion of the western terminal area was applicable. After this reference to the proceedings at Amendment D, the commission's order contains the following: "The application at Amendment E requested permission to transport, as a common carrier by motor vehicle, 'Property from points located in Allegheny County, Pennsylvania over an extension of applicant's existing certificated route . . .' " It does not appear why the commission made the expansion to the terminal area in Amendment E from the City of Pittsburgh to the County of Allegheny. In the commission's brief on reargument and in the brief of the applicant, it is stated that the rights of applicant which were enlarged to the County of Allegheny at Amendment D were class D rights, and did not affect applicant's class A rights which were limited to the City of Pittsburgh. Furthermore, it is said that the commission's order granting the expansion requested in Amendment E did not enlarge applicant's western terminal area as to class A rights, but rather retained the limitation of class A rights to the City of Pittsburgh as the western terminal area. In this respect the commission's order should be clarified.

There is an additional question raised relative to applicant's class A rights. General Order No. 29 of the commission provides that a class A common carrier by motor vehicle operating between fixed termini or over designated routes may, unless otherwise spe-

cifically provided, transport between any two points on the route described, except that local transportation between points within a borough or city is excluded unless specifically so authorized. Applicant, however, claims that, since he is a common carrier by motor vehicle operating between fixed termini and over a designated route, he can properly be granted class A rights without regard to local service, whether it be between points on the extension or between points on his presently certificated route and points on the extension, spur routes, and off-route point set forth in the commission's order of March 14, 1955. Applicant argues that the extension authorized by the commission commenced only at Hollidaysburg on Route 22 and that no point on applicant's presently certificated route was acted upon in any way by the commission; and that therefore whether or not the commission intended to grant local service between points on the presently certificated route and points on the extension is something to be determined in the future. Although it is not definitely stated in express terms, it appears from the commission's order and its brief on reargument that the commission did intend to grant applicant the right to render such local service. This might also follow from the fact that it is not otherwise specifically provided. Upon remission of the record, we think the commission, in view also of the possible implication of the stipulation, might clearly indicate whether the class A rights granted applicant are intended to, and of necessity do, include the right to render local service between points on the applicant's existing route and points in the extended area.

The order of the commission also grants applicant the right to transport property as a class D carrier "from points in the County of Allegheny to points on the above described extension of route, spur routes,

and off-route point and vice versa." Under the circumstances of this proceeding, wherein the commission has attempted to grant rights as both a class A and a class D carrier to the applicant on the applicant's application for amendment to his certificate as a class A carrier, the commission should clarify its order so that we may determine whether it contemplated granting applicant the right to transport property as a class D carrier from and to any point whatsoever on the extension, spur routes, and off-route point or whether applicant's right was limited by the evidence to some specific designated points or area.

Section 1005 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1395, provides that the commission's "findings shall be in sufficient detail to enable the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." Although it may not always be necessary in cases involving carriers by motor vehicle to make findings as detailed as in a rate case (*Follmer Trucking Co. v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 75, 79, 90 A. 2d 294; *Alko Express Lines v. Pennsylvania Public Utility Commission*, 152 Pa. Superior Ct. 27, 35, 30 A. 2d 440), nevertheless, as a general rule, there should be sufficient specific and definite findings in the order of the commission to enable us to review the case and pass upon the legal questions involved (*Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 314, 60 A. 2d 443). In the present proceeding, the commission's order does not contain the requisite basic findings to enable us "to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." After discussing applicant's evidence in great detail and briefly mentioning protestants' evidence, the com-

mission stated that, having considered the record and having weighed the conflicting claims, it came to the conclusion that the granting of the rights sought was necessary and proper for the service, accommodation, and convenience of the public.

The commission's order is devoid of findings to support its conclusion. We think in this proceeding adequate basic findings were required even if the conclusion of the commission is considered an ultimate finding. Applicant's application was for amendment of his certificate as a class A carrier. Evidence sufficient to support the granting of class A rights may not necessarily be sufficient to support the granting of class D rights to the applicant.[1] The commission's order should be sufficiently comprehensive to allow us to determine its validity as to each class.

The record is returned to the Public Utility Commission for further consideration and clarification of its order of March 14, 1955, in accordance with this opinion, and to make specific findings of fact in sufficient detail to enable this Court to determine the controverted questions presented by the proceedings, and to enter such an order in lieu of the prior order of March 14, 1955, as may be deemed just and proper in the premises; and it is further ordered that, upon the entry of such an order by the commission, the record shall forthwith be returned by said commission to this Court, and that the appeals be listed for argument.

---

[1] General Order No. 29, Rule 205, Class D Common Carriers:
"The rights and limitations of holders of Class D certificates will be stated in the certificates. Certificates of this kind will be issued where the rules applying to the other classes with reasonable modifications would not permit service of the kind which the applicant proposes to furnish and which the Commission approves."